## GIBSON v. UTAH STATE TEACHERS' RETIREMENT BOARD et al.

No. 6220. Decided February 18, 1941. (110 P. 2d 365.)

For prior opinion, see 99 Utah 576, 105 P. 2d. 353.

*J. Lambert Gibson,* of Salt Lake City, and *Marl D. Gibson,* of Price, for plaintiff.

*Joseph Chez,* Atty. Gen., *Grover A. Giles,* Asst. Atty. Gen., and *William A. Hilton,* of Salt Lake City, for defendants.

*Elias Hansen,* of Salt Lake City, amicus curiae.

PRATT, Justice.

The petition for rehearing is denied. However, there is a matter we desire to mention: Section 27 (3) provides for a retirement allowance based upon years of prior service. "Prior Service" is limited to service prior to July 1, 1937, *in a status requisite for membership,* Section 3 (6). One who

holds a policy with the Teachers' Insurance and Annuity Association of America upon which the state or a subdivision thereof is paying part of the premiums, is not *in a status requisite for membership;* therefore the period of time during which the state or a subdivision thereof is paying a part of the premiums upon a contract held by a teacher in that association should not be considered in computing his prior service. We mention this in view of certain statements in the briefs and also in the dissenting opinion originally filed. It is not intended that this reasoning should be applied to a member of a local system under Sec. 12(d) and Sec. 13 of the Act. We express no opinion on that matter.

MOFFAT, C. J., and LARSON, JJ., concur.

WOLFE, Justice, (dissenting).

I am not prepared to say whether the period through which the State matched the premiums paid by a holder of a policy in the Teachers' Insurance and Annuity Association should be carved out of the whole period of service prior to July 1, 1937, nor do I need to, because as stated in my previous dissent I do not think under subsection (b) of Sec. 12, Chap. 85, Laws of Utah 1937, the petitioner is entitled to become a member of the Teachers' Retirement Fund. My views are quite fully set out in that dissenting opinion, but I did not sufficiently emphasize one point in that opinion which I think is unanswerable. I shall again set out subsection (b) so that we may have it before us. It reads as follows: "(b) Every teacher who is the holder of a retirement annuity contract with the teachers' insurance and annuity association of America or with any other private organization or company, in which the state of Utah, or any subdivision thereof contributes part of the premium, under said contract; provided, however, that every such teacher, upon ceasing to be a holder of such contract and being otherwise eligible to membership in this system, shall forthwith become a member of the system."

I need not repeat here what I said concerning the fact that the phrase "in which the state of Utah, or any subdivision thereof contributes part of the premium, under said contract" must pertain, not to the holder of a retirement annuity contract with the Teachers' Insurance and Annuity Association (because it was a known fact that the State and not a subdivision did match the premiums of all teachers holding policies therein), but to the second type of organization to which the subdivision might or might not be contributing, to wit: "any other private organization or company." That matter is set out more fully in my opinion on page 357 of 105 P.2d. The opinion of the court must rest on the narrow base that the words "such contract" in the proviso clause means not "retirement annuity contract" as used in the second line of subdivision (b) but means "retirement annuity contract as long as the state or any subdivision thereof contributes to the organization in which said policy is held." Such strained construction might be permissible in order to preserve the intent of the legislature but not to defeat an intent otherwise obvious. Certainly in any insurance contract where there are inactive clauses which spring into operation on default or some contingency, the situation under the contract at such time may be different than when the premiums were being paid, but the contract is still extent. The insured does not cease to be a "holder of such contract." He can enforce rights *under the contract* which arise by the very fact that the formerly inactive clauses spring into operation. Even where a buyer is in default under a time price contract, the seller, when he declares a forfeiture, does so by virtue of the forfeiture clause of the contract. He does not rescind the contract. The contract still exists for the purpose of that very right and the seller stands on it and enforces that right by virtue of the contract. And in the instant case, Gibson held a retirement annuity contract in the Teachers' Insurance and Annuity Association of America even after he ceased paying premiums or the state ceased to pay premiums. By virtue of his very contract, the clause giving him a paid up annuity upon retirement became active and he can stand

upon it and collect those annuities. If Professor Gibson were asked to burn the contract on the theory that it was worthless because he ceased to hold any retirement annunity contract, he would demur emphatically on the ground that he possessed very valuable rights under it. In fact, probably the only difference between the contract in the condition it was when he and the state were contributing and the condition it is now in, is that the annuity on retirement will not be as large as it would have been had he and the state paid in a few more premiums during the few years between the time he ceased paying and the time he actually retires.

From what has been said it appears to be a very strained and forced construction to hold that the phrase "such contract" in the proviso clause refers only to a retirement annuity contract which was in the condition of being currently contributed to by Gibson and the State, even granted the phrase "in which the state of Utah, or any subdivision thereof contributes part of the premium," applies to the Annuity Association. To give the phrase "such contract" that content in the face of the history of the bill while in the legislature, and in view of what the legislature rather obviosuly intended to do, (that is prevent the holder of a substantial annuity policy in a very solvent concern, which annuity the State had helped materially to build up, from participating in another gratuity of the State, and thus hold two annuities) should bring a distinct shock to the judicial mind. As said before, it may be justifiable to strain and pull for a construction in order to save a legislative intent, but never to defeat it.

McDONOUGH, Justice (dissenting).

I am of the opinion that the rehearing should be granted.